IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

WENDELL K. ASH,

    Plaintiff,

v.                                                                      Case No. 2:17-cv-03022

BRIAN GREENWOOD, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are a Motion to Dismiss filed by defendants Jerry Auxier, T. Hamen, and Thomas Chandler [ECF No. 15] and a Motion to Dismiss filed by defendant Brian Greenwood [ECF No. 26]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN**.

I.     **The Plaintiff's Allegations and the Defendants' Motions to Dismiss.**

On May 24, 2017, the plaintiff, Wendell K. Ash ("Ash"), an inmate at the Mount Olive Correctional Complex ("MOCC"), filed his *pro se* Complaint alleging that, on October 29, 2015, he attempted to mail "privileged mail" to West Virginia Secretary of State Natalie Tenant, using a business reply envelope provided by a magazine publisher, by placing a label with Ms. Tenant's name and address onto the envelope

and his return address in the top left corner. [Compl., ECF No. 2, at 6]. Ash filled out a money voucher to have a 49 cent stamp placed onto the envelope before mailing. He maintains he "had done this in the past without any problem." [*Id.*]

However, Ash further alleges that, after processing the voucher and removing the money from his inmate account, MOCC post office employee T. Hamen mailed the envelope without placing the postage stamp on it. [*Id.* at 7]. Consequently, the United States Postal Service returned the mail to MOCC for attempting to use an expired permit code as postage. [*Id.*] Ash further alleges that the mail would have been logged into a privileged mail log; thus, he contends that the defendants had more than one opportunity to correct the mistake. [*Id.*]

Upon return of the mail, MOCC post office supervisor Thomas Chandler charged Ash with a class one prison rule violation for "Violation of State Law." [*Id.*] On December 10, 2015, Ash was served with the write-up and was notified of a hearing before the institutional magistrate, which was to take place on December 17, 2015. [*Id.*]

On December 15, 2015, Ash went to the prison law library to prepare for his hearing. However, while in the law library, he was advised that he was wanted in the magistrate court at that time because his hearing had been moved up. [*Id.* at 8]. Ash appeared before institutional magistrate Brian Greenwood ("Greenwood"), pled not guilty to the charge, and made a motion to continue the hearing to allow him to prepare and gather evidence, which was denied by Greenwood. [*Id.*]

According to the Complaint, Ash told Greenwood that he had paid for the postage and showed him his personal logs detailing his vouchers and legal and privileged mail. [*Id.* at 9]. Thus, Ash asserts that he attempted to show Greenwood that he had not violated any laws by using the business reply envelope, and that he did not intend to use the permit code on the envelope as postage therefore. [*Id.*] Ash further alleges that West Virginia Division of Corrections ("WVDOC") and MOCC policies on inmate mail were never discussed during the hearing. [*Id.*] Greenwood ultimately reduced the charge and found Ash guilty of "Misuse of Correspondence," a class two rule violation. Greenwood's report indicated that Ash had confessed to violating the prison's correspondence regulations, which Ash denies. [*Id.*]

Greenwood sentenced Ash to 30 days of punitive segregation and 30 days of loss of privileges. Ash did not lose any good conduct time. [*Id.* at 10]. Ash was escorted by two correctional officers to the Quilliams I unit (a segregation unit at MOCC) and was placed in cell 406. Ash alleges that the cell had not been cleaned since the prior occupant had been moved, and that the air vents in the cell were not working and were inoperable for the whole 30 days he was in segregation. [*Id.*] Ash further alleges that he was denied a mattress for approximately 13 hours, went without a full set of clothes for eight days, went without footwear, except socks, for four days, and went without toilet paper for three days. [*Id.* at 10-11]. Ash remained in segregation until January 14, 2016. [*Id.* at 12].

Ash further alleges that, at that time, he had an active civil action concerning a will in the Circuit Court of Tyler County, West Virginia. Ash requested that his

paperwork concerning that matter be brought to him from the "state shop." Ash further alleges that, when his files arrived, they were no longer in the folders he had created to keep them organized; rather, the papers were loose in a 55-gallon trash bag, and the folders were never returned to him. [*Id.* at 11]. Ash alleges that Jerry Auxier, the state shop supervisor, confiscated his folders because they contained magazine pictures and they had been lined with clear tape to make them sturdier. [*Id.*] Ash contends that the folders did not violate any prison policy or rule. [*Id.*]

Liberally construing Ash's allegations, as the court must, he appears to be asserting claims under the First, Eighth, and Fourteenth Amendments of the United States Constitution. Specifically, he appears to be raising a procedural due process claim under the Fourteenth Amendment against defendant Greenwood arising out of moving his disciplinary hearing without notice and the alleged falsification of evidence in Greenwood's final report. Ash further claims that defendant Auxier violated his rights when he confiscated his property without due process.

Ash also appears to be alleging that defendants Greenwood and Ballard violated his right to be free from cruel and unusual punishment under the Eighth Amendment when they allowed him to be placed in a segregation unit with broken air vents and denied him sanitary products and clothing for periods of time during his segregated confinement. Furthermore, Ash appears to be alleging that Greenwood and Ballard violated his rights under the First Amendment because he was denied access to the law library while he was in segregation. Additionally, Ash's allegation that defendant Ballard allowed other inmates to violate the prison

correspondence rule for which he was punished can be liberally construed to be alleging a violation of the Fourteenth Amendment's Equal Protection Clause.

Ash also alleges that defendants Chandler and Greenwood denied him the right to contact elected officials, which would be actionable, if at all, under the First Amendment. Finally, Ash contends that defendant Hamen violated unspecified rights when she failed to stamp postage on the envelope in question before mailing it, but after processing his voucher for such postage. Ash seeks relief in the form of reimbursement for his costs and postage.

The defendants' Motions to Dismiss assert that the defendants, in their official capacities, are not "persons" who can be sued under 42 U.S.C. § 1983 and are further subject to sovereign immunity under the Eleventh Amendment. Additionally, the Motions to Dismiss contend that, in their individual capacities, the defendants are entitled to qualified immunity on Ash's claims. Defense counsel filed identical briefs on behalf of the defendants. Those briefs summarily state that Ash's Complaint failed to allege that any of the defendants' actions were in violation of any specific statutory or constitutional right.

While it is true that Ash failed to specifically identify the constitutional bases for his claims, the potential bases for the claims identified by the court herein under the liberal construction requirement are fairly apparent, and counsel is directed to attempt to identify and address potential claims contained in *pro se* Complaints in the future. Generic or boilerplate briefs will not continue to be tolerated by this court. Additionally, with respect to the arguments concerning qualified immunity, counsel

is cautioned against relying on state court precedent concerning qualified immunity when addressing federal constitutional claims.

## II. Standard of Review

The defendants have filed Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

III. Discussion

   A. Official Capacity Claims

Ash's Complaint specifies that he is suing each defendant in both his official and individual capacity. However, an individual who is employed by an arm of the state and sued in his official capacity is immune from suit in federal court under the Eleventh Amendment. *See Edwards v. West Virginia*, No. 2:00-cv-0775, 2002 WL 34364404, at *5 (S.D. W. Va. Mar. 29, 2002).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other 'arms of the State.'" *Holbrook v. West Virginia Reg'l Jail & Corr. Facility Auth.*, No. 3:16-cv-3705, 2016 WL 7645588, at *7 (S.D. W. Va. Dec. 6, 2016); *see also Hans v. Louisiana*, 134 U.S. 1, 9 (1980).

Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties, such as Ash, seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

Furthermore, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that a State, its agencies, and its officials acting in their official capacities, are not "persons" under 42 U.S.C. § 1983. The vehicle for asserting Ash's claims in federal court is section 1983. Thus, the defendants, in their official capacities, are not persons who can be sued thereunder.

For these reasons, I **FIND** that dismissal of all claims against the defendants in their official capacities is warranted.

### B. Individual Capacity Claims

To the extent that Ash has also sued each defendant in his individual capacity, I will address each identified claim below.

#### i. Fourteenth Amendment Due Process Claims.

Ash alleges that defendant Greenwood denied him a fair hearing when he held the disciplinary hearing two days earlier than scheduled and then denied Ash's motion for a continuance. (ECF No. 2 at 12). Ash further alleges that Greenwood falsely stated in his final report that Ash had confessed to violating prison correspondence regulations and further stated that a copy of the envelope in question had been used at the hearing, when the actual envelope was used. (*Id.*) I construe these allegations to be asserting procedural due process claims, which are governed by the Due Process Clause of the Fourteenth Amendment, providing that no "State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

However, in order to state a plausible due process claim herein, Ash must establish a valid liberty interest. Ash did not lose any good conduct time as a result of this rule violation, and he has not otherwise alleged that his punishment therefore exceeded his criminal sentence. Thus, any alleged liberty interest turns on whether Ash's placement in segregation for 30 days "impose[d] an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997).

In *Sandin*, the Supreme Court "found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 485). Similarly, here, I **FIND** that Ash's conditions of confinement during his 30 days in punitive segregation did not present an atypical and significant hardship in relation to the ordinary incidents of prison life. Thus, Ash fails to establish a protected liberty interest necessary to state a plausible due process claim under the Fourteenth Amendment. Accordingly, I **FIND** that the due process claims alleged against defendant Greenwood must be dismissed.

Additionally, to the extent that Ash has alleged that defendant Auxier violated his rights by confiscating his legal file folders without due process, that claim also fails to state a plausible claim for relief. First, Ash was not deprived of any of his actual legal documents. Rather, he simply complains that his documents were taken

9

out of the file folders and thrown together in a 55-gallon trash bag. Thus, he does not allege that he suffered any actual harm or deprivation of his legal materials. Nor can he demonstrate any property interest in the file folders themselves.

### ii. Fourteenth Amendment Equal Protection Claim.

Ash further alleges that defendant Ballard violated his Fourteenth Amendment rights "when he allowed other inmates to violate the very rule [Ash] had been punished for violating." (ECF No. 2 at 13). This is a conclusory allegation which Ash has not supported by any actual facts. To the extent that this allegation can be construed as a claim brought under the Equal Protection Clause of the Fourteenth Amendment, Ash has not alleged any facts to demonstrate that similarly situated inmates were treated differently. Consequently, I **FIND** that this claim fails to state a plausible claim for relief against defendant Ballard under the Fourteenth Amendment.

### iii. Eighth Amendment claims.

Ash further alleges that defendants Greenwood and Ballard "played a part" in his "being placed in a cell where the inhale and exhale vents were not working" and in his "being placed in Quilliams-One where [he] was denied essentials such as shower shoes, toilet paper, outer clothes and all the other items mentioned in this complaint." (ECF No. 2 at 14). Such claims are governed by the Eighth Amendment's prohibition against cruel and unusual punishment.

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual

10

punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991). The Eighth Amendment can be applied to deprivations suffered during imprisonment that are not specifically part of the sentence. *Id.*; *Estelle v. Gamble*, 429 U.S. 97, 97 (1976). The Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). For example, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

The Supreme Court has consistently held, however, that the Constitution "'does not mandate comfortable prisons' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Nonetheless, such conditions "must not involve the wanton and unnecessary infliction of pain, nor may they be disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347.

There is both an objective and subjective component to showing a violation of the Eighth Amendment. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson*, 501 U.S. at 298). In order to demonstrate that a deprivation is extreme enough to satisfy the objective component in the context of a "conditions-of-confinement" claim, the "prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting

11

from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citations omitted).

Second, the "prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Wilson*, 504 U.S. at 303. This means that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

As to the first component, the deprivations alleged here are not objectively sufficiently serious. The most troubling of Ash's allegations appears to be his assertion that he was denied access to toilet paper for several days. Various courts have held that denial of toilet paper for a brief period of time does not rise to the level of an Eighth Amendment violation. *See, e.g., Cusamano v. Sobek*, 604 F. Supp.2d 416, 488 (N.D.N.Y. 2009) ("a mere denial of the toilet paper and soap on several occasions for a few days is, while dismaying and unprofessional, not a denial of the minimal civilized measure of life's necessities."); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivation of toilet paper . . . and the like do not rise to the level of a constitutional violation"); *Schwartz v. Jones*, No. 99-3269, 2001 WL 118600, at *6 (E.D. La. Feb. 9, 2001) (Failure to provide plaintiff toilet paper for one to two weeks did not state a claim of constitutional magnitude); *Gilson v. Cox*,

711 F. Supp. 354, 355-56 (E.D. Mich. 1989) (Failure to provide toilet paper upon request did not raise a substantial matter of federal constitutional law); *Citro v. Zeck*, 544 F. Supp. 829, 830 (W.D.N.Y. 1982) (Failure to provide an inmate adequate supply of toilet paper did not present a question of constitutional magnitude). *But see Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996) (allowing inmate only minimum amounts of toilet paper can contribute to unconstitutional conditions of confinement); *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992) (detention of inmate in cell without running water, toilet paper, or urinal for 29 hours, in combination with other conditions of confinement, could constitute unconstitutional conditions of confinement). This court believes that not providing an inmate with toilet paper denies "the minimal civilized measure of life's necessities." Nonetheless, Ash has not asserted or established that he suffered any actual physical injury as a result of this alleged deprivation. Consequently, he has not established a plausible Eighth Amendment violation as a result thereof.

Additionally, the temporary deprivation of a mattress, bedding, clothing, or hygiene products, without a showing of an actual physical injury resulting therefrom, does not rise to the level of an Eighth Amendment violation. *See* 42 U.S.C. § 1997e(e); *see also, e.g., McNatt v. Unit Manager Parker*, No. 3:99-cv-01397, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (totality of conditions in restrictive housing unit, including stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly;

and smaller food portions, while not pleasant, did not rise to the level of Eighth Amendment violation); *Moore v. Parham*, No. 1:16-cv-01519, 2017 WL 4118458, at *3-4 (E.D. Va. Mar. 23, 2017) (denial of hygiene items for 19 days did not violate Eighth Amendment); *Tramell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (denial of toiletries for two weeks not an obvious risk to health or safety and no serious physical or emotional injury suffered; thus, no Eighth Amendment violation); *Rodgers v. Thomas*, 879 F.2d 380 (8th Cir. 1989) (deprivation of all clothing but socks and underwear for five days does not establish Eighth Amendment violation).

Even if Ash could demonstrate that the temporary failure to provide him the hygiene products and clothing, or the broken ventilation system about which he complains, rose to the level of a constitutional deprivation, he has not established that he suffered any actual injury as a result thereof. Accordingly, his Complaint fails to state any plausible Eighth Amendment claim on this basis. However, correctional employees should not conclude from the dismissal of these claims that the court approves of the conditions of confinement to which Ash was subjected. Here, as in many cases, the result is dictated by the failure to demonstrate any actual injury from the alleged conduct.

### iv. First Amendment claims.

Ash also alleges that defendants Greenwood and Ballard denied his right to meaningful access to the law library. Such a claim is actionable, if at all, under the First Amendment. The right of access to the courts includes providing prisoners with

the means to "attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

In *Lewis*, the Supreme Court reviewed its decision in *Bounds v. Smith*, 430 U.S. 817 (1977), and reiterated that "[i]nsofar as the right vindicated by *Bounds* is concerned, 'meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." 518 U.S. at 350. Thus, in order to prevail on a First Amendment claim grounded in the denial of access to the courts, "a prisoner must demonstrate that he suffered an actual injury, such as missing a court-imposed deadline or being unable to file a complaint because of the Defendants' actions." *Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir., Oct. 7, 2015) (citing *Lewis*, 518 U.S. at 351-52).

Ash's claim is grounded in his denial of access to the law library at MOCC during his time in segregation. His Complaint acknowledged that he was not denied all access to legal materials because he could make a written request for materials from the law library, but must depend on other inmates to do his research, which allows them to read other inmates' legal documents. (ECF No. 2 at 13). However, Ash has not alleged that he suffered any actual injury concerning any pending or proposed legal proceeding while he was in segregation. Because Ash has not alleged or established that he suffered any actual injury from his limited access to legal

15

materials during his 30-day stay in segregation, I **FIND** that his Complaint fails to state a plausible First Amendment claim on that basis.[1]

Furthermore, to the extent that Ash has also alleged that defendants Chandler, Hamen, and Greenwood denied him his right to contact elected officials by not ensuring that his mail to Secretary of State Natalie Tenant was actually mailed to her, that failure does not arise to the level of a constitutional violation. A prisoner's rights concerning inmate mail are also governed by the First Amendment and the restriction of the same may be justified in furtherance of substantial governmental interests of security, order or rehabilitation, and giving appropriate deference to the decisions of prison administrators. *See Procunier v. Martinez*, 416 U.S. 396, 413-414 n.14 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Thornburgh*, 490 U.S. at 413).

Courts have previously held that isolated incidents of mail tampering are usually insufficient to establish a constitutional violation. Rather, an inmate must show that prison officials "regularly and unjustifiably interfered with" his or her mail. *See, e.g., Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990);

---

[1] David Ballard has not been served with process and, thus, has not made an appearance herein. Nonetheless, because the claims alleged against him fail to state any plausible claim for relief, the claims against him will be dismissed.

*Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975). Here, the plaintiff alleges that a single piece of outgoing mail was not delivered. Under the facts alleged, I **FIND** that the plaintiff has not stated a plausible First Amendment claim.

Moreover, at most, the conduct of defendant Hamen in failing to stamp the postage on the envelope amounts to negligence, which is insufficient to state a federal constitutional claim. Ash's Response to the Motion to Dismiss filed by defendants Chandler, Hamen and Auxier asserts that "T. Hamen may have very well done it purposely." (ECF No. 24). However, he offers no factual support therefore, and his contention is conclusory and speculative. Accordingly, I **FIND** that it fails to rise to the level of a plausible federal constitutional violation.

### v. Qualified immunity.

The defendants' Motions to Dismiss assert that the defendants are entitled to qualified immunity on all of Ash's claim against them. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." M*eyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put

17

the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Because Ash's Complaint fails to state a plausible violation of any clearly established constitutional right, I **FIND** that all of the defendants are entitled to qualified immunity on Ash's claims against them.

IV. **Conclusion**

For the reasons stated herein, I **FIND** that Ash's Complaint fails to state any claim upon which relief can be granted and, thus, the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, it is hereby **ORDERED** that the Motion to Dismiss of Defendants Jerry Auxier, T. Hamen, and Thomas Chandler (ECF No. 15) and the Motion to Dismiss of Defendant Brian Greenwood (ECF No. 26) are **GRANTED**, and this civil action is hereby **DISMISSED** from the docket of the court.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: August 30, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE